E-filed 3/10/2017

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PC DRIVERS HEADQUARTERS, LP,<br><br>Plaintiff,<br><br>v.<br><br>AMBICOM HOLDINGS, INC.,<br><br>Defendant. | Case No.16-mc-80125-HRL<br><br>**ORDER DENYING MOTION TO STAY**<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION FOR LEAVE TO FILE STATUS REPORT**<br><br>Re: Dkt. Nos. 54, 61, 65 |

This is an action to enforce a default judgment obtained by plaintiff PC Drivers Headquarters LP ("PC Drivers") in the Western District of Texas. Defendant AmbiCom Holdings, Inc. ("AmbiCom") has challenged the default judgment in the Western District of Texas and moves this court to stay enforcement proceedings pending the resolution of the Texas motion. Dkt. Nos. 54, 61. For the reasons described below, the court denies AmbiCom's motion for a stay. This order also addresses PC Drivers's motion for leave to file a post-submission status report and brief. *See* Dkt. No. 65.

**BACKGROUND**

PC Drivers and AmbiCom entered into a Joint Development and License Agreement (JDLA) in 2014. Dkt. No. 64-3. The relationship soured, and the parties embarked upon a series of arbitration and litigation proceedings. *Id.* In one of these proceedings, PC Drivers sued AmbiCom in the Western District of Texas. AmbiCom's attorney at the time, Richard Hunt ("Hunt"), advised the defendant company to file an answer and defend the lawsuit, but AmbiCom's CEO, John Hwang ("Hwang"), determined that AmbiCom could not afford to pay

1  Hunt or other counsel.  Dkt. No. 64-3, Cornell Decl.  Hunt withdrew as AmbiCom's counsel in
2  December of 2015.  *Id.*  Kevin Cornell ("Cornell"), a former President of AmbiCom and a current
3  shareholder, asserts that the company later obtained funds (from PC Drivers, pursuant to a
4  "Transition Services Agreement") with which AmbiCom could have defended itself, but that
5  Hwang elected to pay himself instead.  *Id.*  Hwang did not inform shareholders or creditors that
6  AmbiCom was involved in litigation or that it was risking default in the same, Cornell claims.  *Id.*
7  On April 29, 2016, the Western District of Texas granted PC Drivers' motion for default
8  judgment, entering judgment against AmbiCom in the amount of $318,518.90 (plus post-judgment
9  interest at 0.63% per annum).  Dkt. No. 1.

10  Proceedings before this court commenced in June of 2016 when PC Drivers registered the
11  default judgment in the Northern District of California.  Dkt. No 1.  Initially, matters proceeded
12  quickly for PC Drivers, as the court granted its unopposed motion to appoint Michael Warda
13  ("Warda") as the receiver for U.S. Patent No. 8,438,378 ("the Patent") in August 2016.  Dkt. No.
14  19.  In support of its motion to appoint a receiver, PC Drivers filed a communication from Hwang
15  indicating that AmbiCom would not oppose Warda's appointment and that it would cooperate
16  with the receiver in selling the Patent.  Dkt. No. 16.  PC Drivers next filed an ex parte application
17  and, later, a noticed motion requesting an order for a public sale of the Patent.  Dkt. Nos. 22, 26.

18  AmbiCom appeared to oppose PC Drivers's motion in October 2016.  AmbiCom also filed
19  a competing motion requesting that the court order a *private* sale of the Patent.  Dkt. Nos. 28, 29.
20  In this motion, AmbiCom informed the court and the receiver that it had entered into a
21  Commitment Letter with an entity called Voosh, LLC, on October 3, 2016, to purchase the '378
22  Patent.  The consideration for the patent, AmbiCom asserted, would ultimately amount to
23  $1,000,000, including (1) $365,000 in cash (to pay the judgment, plus interest), (2) "the
24  assumption by Voosh of AmbiCom's obligations" to third parties WebBank ($130,000) and
25  Windset ($48,000), and (3) 10% of Voosh's revenues from the exploitation of the '378 Patent until
26  AmbiCom has received $457,000.  Dkt. Nos. 27, 29.  The Commitment Letter stated that
27  AmbiCom would pay PC Drivers the full amount of the monetary judgment, plus interest, and that
28  Voosh had put $330,000 into AmbiCom's counsel's IOLTA account to demonstrate that the offer

was genuine. Dkt. No. 27, Casas Decl., at ¶ 5. AmbiCom asserted that this option, unlike the public sale, would allow the receiver to immediately satisfy the judgment debt. Dkt. No. 27.

The court held a hearing on the competing motions for a public and private sale on December 13, 2016. Dkt. No. 46. The court did not resolve the issues presented at that time, but instead requested an updated report and recommendation from the receiver, Warda, who had not weighed in on the private sale. Dkt. No. 47. The court instructed Warda to file his report by January 12, 2017, and permitted the parties to file responses, which were due January 23, 2017. Dkt. No. 47.

Warda timely filed his report, Dkt. No. 52, and PC Drivers timely filed its response, Dkt. No. 55. AmbiCom, however, missed the deadline for responding to the receiver's report. Instead, on January 22, AmbiCom filed a motion to stay these enforcement proceedings. Dkt. No. 54. AmbiCom requested the stay because it had filed a motion to vacate the default judgment that PC Drivers had obtained against it in the Western District of Texas—the judgment that forms the basis of this proceeding. *Id*. AmbiCom noticed a hearing on its motion for a stay on January 24, 2017, *id.*, two days after it filed its motion, contrary to the requirement that noticed motions set a hearing date 35 days in advance. AmbiCom did not file a motion to shorten time.

The parties appeared before the court on January 24 for a judgment debtor's examination (which had been scheduled earlier). Dkt. No. 57. Before having the witness sworn in, the court informed the parties that the motion for a stay had been improperly noticed and that it was not on the calendar. *Id.* The court noted that AmbiCom could re-notice its motion, if it chose to do so. The most significant revelation on January 24, however, came as AmbiCom informed the court and PC Drivers that the private sale had been taken off the table.

AmbiCom re-noticed its motion for a stay, setting a hearing on March 7, 2017. Dkt. No. 61. In its motion, AmbiCom requests that this court grant a stay pursuant to Federal Rule of Civil Procedure 62(b)(4) while the Western District of Texas resolves its Rule 60 motion to vacate the default judgment. AmbiCom argues that (1) PC Drivers obtained the default judgment on the basis of fraud or misrepresentation, (2) AmbiCom would suffer irreparable harm in the form of the loss of the Patent if this action is not stayed, (3) the court can craft the stay in a manner that

3

protects PC Drivers's interests, and (4) failing to grant the stay could create confusion if the Texas court vacates the default judgment. Ambicom attached its motion to set aside the default judgment as an exhibit to its motion for a stay. In its motion to set aside, AmbiCom argues that it only defaulted because of the misfeasance of its CEO at the time, Hwang. Further, AmbiCom asserts that PC Drivers fraudulently obtained the default judgment by (1) misrepresenting the parties' core obligations under the JDLA, (2) misrepresenting the parties' financial obligations with respect to those core obligations, (3) misrepresenting AmbiCom's obligation to pay bills from third parties under the JDLA, and (4) concealing the Transition Services Agreement from the court. AmibCom also argues that PC Drivers's motion for default judgment sought more relief than Plaintiff had requested in its complaint. Dkt. No. 54.

PC Drivers responded that AmbiCom's motion for a stay must fail because AmbiCom does not demonstrate a probability of success on the merits. Dkt. No. 60. That is, PC Drivers asserts, AmbiCom failed to carry its burden to show that the default judgment was entered as a result of excusable neglect, inadvertence, or surprise, or that PC Drivers fraudulently prevented AmbiCom from defending the case. *Id.* PC Drivers further argues that AmbiCom's current arguments all could have been raised at trial, and that the purpose of a Rule 60 motion is not to relitigate issues that could have been argued had AmbiCom appeared in the first place. *Id.* With respect to AmbiCom's argument that the default was due to Hwang's misfeasance, PC Drivers contends that this is a matter between AmbiCom and Hwang. *Id.* Finally, PC Drivers argues that AmbiCom consented to the default judgment by moving this court for an order compelling a private sale, and that AmbiCom cannot seek to influence sale proceedings at the same time as it attacks the underlying judgment. *Id.* If the court decides to grant the stay, PC Drivers requests that it require AmbiCom to post a bond for 1.5 times the amount of the default judgment as security.[1] *Id.*

On March 2, 2017, five days before the hearing on this motion, PC Drivers submitted a motion for leave to file a "Post-Submission Status Report and Brief." Dkt. No. 65. In this motion,

---

[1] At the hearing on this motion, AmbiCom, which did not address PC Drivers's request for a bond in its reply brief, argued that posting a bond would not be necessary because PC Drivers would not be prejudiced by a stay.

4

PC Drivers informed the court that AmbiCom had entered into a licensing agreement with Voosh, which PC Drivers suspected would diminish or destroy the value of the Patent. *Id.* In addition to requesting leave to file additional material, PC Drivers requested that the court order AmbiCom to deliver a copy of the Voosh license and "all emails, contracts, letters, texts, addendums, licenses, that pertain to the Voosh License" to PC Drivers. *Id.*

At the hearing on March 7, 2017, the court granted PC Drivers leave to file its motion and allowed AmbiCom to file a response. Dkt. No. 66. Additionally, AmbiCom pledged to provide the court, the receiver, and PC Drivers with a copy of the Voosh License. Dkt. No. 66. In its response, AmbiCom argues that the Voosh license does not violate any of this court's orders, and that the receiver is not acting independently. Dkt. No. 67. AmbiCom attached the license to its response. *Id.*

## DISCUSSION

**1. AmbiCom's Motion For A Stay.**

Federal Rule of Civil Procedure 62(b)(4) states: "On appropriate terms for the opposing party's security, the court may stay the execution of a judgment—or any proceedings to enforce it—pending disposition of . . . [a motion] under Rule 60, for relief from a judgment or order." Fed. R. Civ. P. 62(b)(4). The use of the word "may" in the Rule signals that the court's decision to grant or deny a stay of enforcement proceedings is discretionary. *Fredianelli v. Jenkins*, No. C-11-3232 EMC, 2013 WL 5934988, at *1 (N.D. Cal. Nov. 4, 2013); *U.S. v. Moyer*, No. C 07-00510 SBA, 2008 WL 3478063, at *6 (N.D. Cal. Aug. 12, 2008); *Wallis v. Centennial Ins. Co.*, Civ. No. 2:08-2558 WBS AC, 2014 WL 6804086, at *1 (E.D. Cal. Dec. 2, 2014) (quoting *Gibbs v. Okla. Dep't. of Transp.*, 999 F.2d 547, 547 (10th Cir. 1993)) ("The decision to stay proceedings to enforce a judgment pending disposition of a motion for . . . relief from judgment is left to the discretion of the district court.").

In evaluating stay requests under Rule 62(b), district courts have considered a variety of factors.[2] The parties did not cite, however, and the court did not find, any Ninth Circuit cases

---

[2] Some district courts have considered the general factors for determining whether to issue a stay: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as

describing the factors that should guide a court's discretion in ruling on a Rule 62(b)(4) motion. *See also Moyer*, 2008 WL 3478063, at *6 ("[i]t appears no court in the Ninth Circuit has ever expressly considered what factors should be used to determine whether or not a stay would be appropriate under Rule 62(b)."); Jesse D. Panoff, *Debtors, Creditors, Default Judgments, & Discretion: Why Rule 62(B)(4) Will Become One of the Most Important Federal Rules of Civil Procedure*, 44 Creighton L. Rev. 227, 229 (2010) ("Few Rule 62(b)(4) precedents exist, [and] published opinions are sparse . . . . In fact, the rule is so underdeveloped that no uniform set of elements has emerged to guide courts in determining a stay's propriety."). The court thus weighs a combination of the factors described in footnote 1 and, ultimately, concludes that AmbiCom's motion for a stay should be denied.

The court first addresses those factors weighing in favor of granting a stay. AmbiCom has correctly pointed out that a denial of a stay, if coupled with a decision in Texas to vacate the default judgment, could lead to confusion, wasted effort, and additional litigation. AmbiCom would also likely be harmed if a stay were denied, as the court would then consider the motions requesting an order of sale, which could result in AmbiCom's loss of the Patent.

At the same time, however, PC Drivers, which strongly opposes AmbiCom's motion for a stay, could be harmed if the court *granted* a stay. While a stay would only last until the Texas court reached a decision on AmbiCom's motion, the length of this period of delay is unknown. A lengthy delay would represent a burden to PC Drivers, especially when one considers that this

---

balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *TradewindsAirlines, Inc. v. Soros*, No. 08 Civ. 5901(JFK), 2009 WL 435298 (S.D.N.Y. Feb. 23, 2009) (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). Others have considered the factors relevant under Rule 62(c): "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Moyer*, No. C 07-00510 SBA, 2008 WL 3478063, at *6 (N.D. Cal. Aug. 12, 2008) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Still others have exercised discretion without a discussion of the factors guiding them. *See, e.g.*, *Nunley v. Ethel Hedgeman Lyle Academy*, No. 4:08-cv-1664 CAS, 2010 WL 501465, at *2 (E.D. Mo. Feb. 8, 2010); *Fleming, Zulack & Williamson, LLP v. Information Super Station, LLC*, 215 F.R.D. 5, 8 (D.D.C. 2003).

enforcement proceeding has been pending since June of 2016. Additionally, while the court states no opinion as to the propriety of the Voosh license or its relation to and effect on the value of the Patent, AmbiCom's actions at least raise the possibility that the debtor company could take some action during the pendency of a stay that could result in harm to PC Drivers by reducing the value of the Patent.

Weighing against granting a stay, the circumstances surrounding AmbiCom's filing of its motion for a stay raise questions concerning AmbiCom's conduct of this litigation. AmbiCom elected not to file an answer or oppose the entry of default in the Western District of Texas last year, and it filed—and then vigorously pursued—a motion for a private sale in this proceeding. The proposed private sale involved a former officer and current shareholder of AmbiCom, and the sale could have been viewed as an attempt to avoid PC Drivers's right of last refusal by inflating the price for the Patent, as the majority of the consideration offered was hypothetical. In any event, only after the receiver filed a report endorsing a public sale did AmbiCom file its motion to vacate the default judgment and this motion for a stay. AmbiCom consciously chose not to defend itself against PC Drivers's suit in Texas. It could have challenged the default judgment at any point in the last 10 months since it was issued. It did not do so. The fact that it waited until the receiver endorsed the public sale is suspect, at best, and suggests that AmbiCom is merely trying another tactic to delay this proceeding. AmbiCom has submitted a declaration from its new CEO, Alain Lewand, in which Lewand confirms that he terminated the private sale and sought to challenge the default judgment in response to the receiver's report, based upon the report's contents and the receiver's lack of response to his communications. Dkt. No. 67, Lewand Decl., ¶ 10. But AmbiCom had the opportunity to respond to the receiver's report. It did not do so—not, at least, until *after* changing its tactics and filing the present motion.[3]

AmbiCom's argument that it failed to challenge the default earlier because of the

---

[3] Lewand also expressed his suspicions that PC Drivers was not interested "in getting its debt paid, but was solely interested in obtaining the Patent for a low-ball credit bid of $50,000." Dkt. No. 67, Lewand Decl., ¶ 2. The receiver's report, however, endorses, as the opening bid at a public sale, a credit bid equal to the amount of the judgment debt owed by AmbiCom. Dkt. No. 52, ¶ J. Such a bid would satisfy AmbiCom's debt to PC Drivers.

misfeasance of its former CEO, and that this misfeasance entitles it to a stay, is not persuasive. First, Hwang was removed in October of 2016, yet AmbiCom's new leadership continued to pursue the motion for private sale for three months, rather than immediately challenging the underlying default judgment.  Second, Hwang's alleged misfeasance is not chargeable to PC Drivers and is not a valid reason to vacate the default judgment, let alone an extraordinary circumstance justifying relief under Rule 60(b)(6).  *See Hesling v. CSX Transp. Inc.*, 396 F.3d 632, 642-43 (5th Cir. 2005) (relief under Fed. R. Civ. P. 60(b)(6) is only granted under "extraordinary circumstances").  If AmbiCom is concerned about Hwang's misfeasance, its grievance is against Hwang, not PC Drivers.

Additionally, as the previous paragraphs state, though AmbiCom now challenges the default judgment, it spent months litigating in this enforcement proceeding over the best way to satisfy the judgment.  By failing to oppose the appointment of a receiver and indicating its intent to cooperate with a sale, then challenging the proposed mechanism by which that sale would occur, AmbiCom apparently accepted the validity of the default judgment.  AmbiCom's abrupt change of position in seeking to vacate the judgment weighs against granting the stay.

Also weighing against a stay, each of AmbiCom's arguments in its motion to vacate the default judgment—with the exception of the argument regarding Hwang's misfeasance, which the court discussed above—could have been raised in the Texas action.  AmbiCom argues that PC Drivers' (1) misrepresented the parties' core obligations under the JDLA, (2) misrepresented the parties' financial obligations with respect to those core obligations, (3) misrepresented AmbiCom's obligation to pay bills from third parties under the JDLA, (4) concealed the Transition Services Agreement from the court, and (5) sought more relief in the default judgment than it had requested in its complaint.  Dkt. No. 54.  AmbiCom could have made the same arguments before the Western District of Texas last year, or on appeal, and it elected not to do so. While the Federal Rules of Civil Procedure favor decisions on the merits, parties' decisions have consequences.  The court is not persuaded that AmbiCom's attempt to, essentially, seek a do-over from the Western District of Texas weighs in favor of granting a stay.  *See Fackleman v. Bell*, 564 F.2d 734, 737 (5th Cir. 1977) ("[a] 60(b) motion is not a remedy for one who fails to prosecute his

rights.").

Finally, the court is not persuaded that AmbiCom has shown a possibility of success on the merits of its Rule 60(b) motion. AmbiCom seeks relief from the judgment on the basis of Rule 60(b)(3), (4), and (6). Rule 60(b)(3) requires AmbiCom to show not only that PC Drivers' conduct was fraudulent, but also that its fraudulent conduct "prevented [AmbiCom] from fully and fairly presenting [its] case." *Boissier v. Katsur*, No. 16-30463, 2017 WL 318639, at *2 (5th Cir. Jan. 20, 2017); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339, 1342 (5th Cir. 1987). AmbiCom has made no such showing and does not even argue that it was prevented from making its case (except by Hwang's alleged misfeasance, which is not due to PC Drivers's conduct). Similarly, Rule 60(b)(4) applies only when a judgment is void due to jurisdictional defects or a violation of due process (i.e., a deprivation of "notice or the opportunity to be heard"). *Scott v. Carpanzano*, 556 F. App'x 288, 291-92 (5th Cir. 2014) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)); *Williams v. New Orleans Public Service, Inc.*, 728 F.2d 730, 735 (5th Cir. 1984). AmbiCom does not argue that there were any jurisdictional errors or that it lacked notice of either the complaint or the motion for default judgment. As for Rule 60(b)(6) and the required showing of "extraordinary circumstances," AmbiCom's arguments about Hwang's misfeasance fall short.

After weighing the factors described above, the court finds the balance tips decidedly against granting a stay. AmbiCom's motion for a stay is thus denied.

**2. PC Drivers's Motion for Leave to File a Post-Submission Status Report and Brief.**

The court has already granted PC Drivers's request for leave to submit a supplemental brief, and AmbiCom has provided PC Drivers with a copy of the license. Thus, the court deems these requests for relief satisfied. The court declines to order AmbiCom to produce the additional documents related to the Voosh license that PC Drivers has requested at this time, without prejudice to PC Drivers submitting a renewed request, should it choose to do so, in the form of a joint discovery letter brief that complies with the undersigned's Standing Order Re: Civil Discovery Disputes.

**CONCLUSION**

The court denies AmbiCom's motion for a stay. The court has already granted-in-part, and now denies-in-part, PC Drivers's requests for relief in its motion for leave to file a post-submission status report and brief.

**IT IS SO ORDERED.**

Dated: 3/10/2017

HOWARD R. LLOYD
United States Magistrate Judge